### MAY et al. v. KEYSTONE YELLOW PINE CO.

(District Court, E. D. Pennsylvania. June 27, 1902.)

#### No. 72.

1. SHIPPING—GENERAL AVERAGE—LOSSES SUBJECTS OF COMPENSATION.
   Where the rudder of a ship was partly torn loose in a gale at sea, and it became necessary to cut it away to prevent its beating a hole in the ship during the storm, its value in its damaged condition before it was cut away is a proper subject for allowance in general average.

2. SAME—WAGES AND PROVISIONS OF CREW.
   The wages and provisions of a crew during the time they were engaged at sea in constructing a jury rudder after it became necessary to cut away the broken rudder to save the ship in a storm are proper items for allowance in general average.

In Admiralty. Suit on general average bond.

Horace L. Cheyney and John F. Lewis, for libelant.
Theo. M. Etting, for respondent.

J. B. McPHERSON, District Judge. This controversy concerns two items of the general average adjustment that was made in consequence of certain losses sustained by the bark Guy C. Goss during a voyage from the port of Vancouver to the port of Philadelphia. Not long after the ship had rounded Cape Horn, she encountered severe weather, and during the course of. the gale, and in consequence thereof, her rudder was torn partly loose, and could no longer be used for steering the ship. For 15 or 16 hours efforts were made to repair the injury, but, owing to the strength of the wind, and to the heavy sea that was running, it was found impossible to make the damage good, and, as the loosened rudder threatened to beat violently against the rudder post, and thereby to cause the ship to spring a leak, the captain decided to cut the rudder away. This was accordingly done, and of course rendered the vessel helpless. All hands were immediately set to work to construct a jury rudder, and meanwhile sails were set to steady the ship. In this condition she drifted about for seven days, while the temporary rudder was being made. This being finally accomplished, the ship proceeded upon her voyage, and arrived safely at the port of Philadelphia. Here the customary protest was made, and the respondent, who was the consignee of the. cargo, gave a general average bond, upon which the present action has been brought. The adjuster allowed two items with which the present dispute is concerned—First, the estimated value of the rudder in its damaged condition just before it was cut away; and, second,

¶ 1. General average, see note to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.

the cost of the wages and provisions of the crew during the seven days while the jury rudder was being constructed.

With regard to the first item, the respondent contends that the rudder had ceased to have any value whatever at the time it was cut away, and, therefore, that no allowance of any amount should be made. I agree with this conclusion if the fact were as supposed, but I am unable to assent to this view of the testimony. I think it appears with sufficient clearness that, if it had not been for the storm to which the vessel was exposed at the time the rudder was sacrificed, it could easily have been restored to its former condition; in other words, it had some value at the time it was cut away, and this is sufficient to justify an allowance in general average for such value. Judge Butler decided the point expressly in this district in The Margarethe Blanca (D. C.) 12 Fed. 723 (I refer to his opinion for a satisfactory discussion of the question), and his decision was affirmed on appeal: Id. (C. C.) 14 Fed. 59. See, also, The Star of Hope, 9 Wall. 228, 229, 19 L. Ed. 638, and Gourl. Gen. Av. 174 et seq. I do not understand that any objection is made to the amount estimated by the adjusters on this account, if any allowance at all is to be made therefor. The argument of the respondent is addressed solely to the question whether the cargo is liable to contribute anything whatever for the loss of the rudder.

I think, also, that the second item was properly allowed by the adjusters. Undoubtedly, if the ship had been able to proceed, and had borne away to a port of refuge in order to repair the damage caused by the storm, the wages and provisions of the crew during the period of her deviation to the port of refuge and her return to her course would be a proper subject for allowance in general average (Hobson v. Lord, 92 U. S. 397, 23 L. Ed. 613; 14 Am. & Eng. Enc. Law, 980); and I am unable to see any sufficient reason why a similar allowance should not be made for the period during which the vessel was delayed at sea, making the same repairs by the aid of her own crew. In the present case, the cost is much less than if she had gone to Buenos Ayres, which was the nearest port, even if she had been able to proceed in her rudderless condition. It seems to me that the cost of wages and provisions during this period is an extraordinary expense incurred by the ship upon behalf of the common enterprise. It was a necessary expenditure, while the ship was being put into condition to prosecute the voyage, and, upon the principles that govern this branch of the law of general average, I think the allowance was unquestionably correct.

A decree may be prepared in favor of the libelant.